**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333 | Fax: (818) 347-4118

**LAW OFFICES OF GRECH & PACKER**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Phone: (951) 682-9311

*Attorneys for Plaintiff* DAVID COUCH, Sr.

**SINGLETON SCHREIBER, LLP**
Kimberly S. Trimble (SBN 288682)
ktrimble@singletonschreiber.com
591 Camino de la Reina, Suite 1025
San Diego, CA 92108
(619) 860-0121

*Attorneys for Plaintiff* JEANELLE COUCH

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID COUCH, Sr., and JEANELLE COUCH; both individually and as successors in interest to DAVID COUCH, Jr. Decedent,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE OF CALIFORNIA, by and through CALIFORNIA HIGHWAY PATROL; RYAN CATES; SHASTA COUNTY; and DOES 1-210, inclusive,<br><br>Defendants. | Case No.: **2:24-cv-00481-TLN-AC**<br><br>[*Honorable Troy L. Nunley*]<br>Magistrate Judge Allison Claire<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT SHASTA COUNTY'S MOTION TO SEVER THE ACTION**<br><br>**Action Originally Filed**: January 23, 2024<br>**Action Removed**: February 15, 2024<br>**Jury Trial**: Not Set<br>**Hearing**<br>Date: May 2, 2024<br>Time: 2:00 p.m.<br>Courtroom: 2, 15th Floor |

1   Case No. 2:24-cv-00481-TLN-AC
PLAINTIFFS' OPPOSITION TO DEFENDANT SHASTA COUNTY'S MOTION TO SEVER

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This civil rights action arises out of Shasta County Jail's improper treatment of Decedent David Couch, Jr.'s mental illness, followed by California Highway Patrol's use of excessive and unreasonable force during Couch's manic episode that resulted from the improper treatment. Couch died from his injuries. Despite the fundamental connection between the unlawful conduct of the jail and the CHP officers, Defendant Shasta County has moved to sever Plaintiffs' action against Shasta County and its employees from Plaintiffs' action against the CHP defendants. *See* Def. Mot. to Sever at 4, Dkt 8-1 (hereinafter "Def. Mot.").

As set forth in this brief, the factors governing whether to sever an action overwhelmingly weigh in favor of a joint proceeding. Specifically, the Defendants are tied together through the common legal issue of proximate causation. Because the CHP officer's use of deadly force is a potential "superseding cause" to proximate causation (regarding liability of County Defendants), the events involve the same "transaction" (Factor 1), and common issues of fact and law (Factor 2). In addition to the duplicative role of the CHP officer's testimony, severance would require family members to go through the difficult experience, twice, of explaining how the loss of their loved one has harmed them. (Factor 4.) The redundant evidence, compounded by impaneling two different juries for the same facts, would directly undermine judicial economy. (Factor 3.) Finally, joint trials with separate defendants generally do not "prejudice" a defendant, and this case is no exception.

Plaintiffs respectfully request that this Court deny Defendant Shasta County's motion to sever.

## II. FACTUAL AND PROCEDURAL HISTORY

As alleged, Decedent Couch was held in the custody, care, and control of Shasta County and its officials in the Shasta County Jail from December 25, 2022, to February 8, 2023, where it was known to County officials that he had been diagnosed with serious

mental illness and had been prescribed multiple antipsychotic medications that were required to be taken in tandem. *See* Compl. ¶¶ 37-39, Dkt. 1-3. While Decedent was in custody in Shasta County Jail, he was held in solitary confinement, and jail personnel prescribed improper medication and inappropriate treatment that fell below the reasonable standard of care.. *Id.* ¶¶ 40-41.

When Decedent was released from Shasta County Jail on February 8, 2023, he was suffering the exacerbated effects of his untreated serious mental illness, which was caused the inappropriate medical care at the jail. *Id.* ¶ 42. Decedent's behavior on the day of release indicated that he was in the midst of a manic episode. Nevertheless, Shasta officials carelessly released him without information as to where to continue treatment and without a follow-up appointment for his mental health condition. *Id.* ¶ 43. Due to Shasta officials' failure to provide proper medical care, the following day, on February 9, 2023, at approximately 5:45 p.m., while Decedent was still in the throes of his manic episode, Officer Cates responded to Decedent's residence, shot, and killed him. *Id.* ¶¶ 44, 56

Plaintiffs' Complaint for Damages alleges six (6) causes of action: (1) Fourth Amendment Excessive Force pursuant to 42 U.S.C. §1983 against Officer Cates and Does 1-10 (State individual employees, ("CHP Does")); (2) Eighth and Fourteenth Amendment Failure to Provide Medical Care pursuant to 42 U.S.C. §1983 against Defendant Does 11-20 (Shasta County individual employees ("Shasta Does")); (3) Fourteenth Amendment Denial of Familial Relationship pursuant to 42 U.S.C. §1983 against Officer Cates, Does 1-10 (CHP Does), and Does 11-20 (Shasta Does); (4) Battery against Officer Cates, Does 1-10 (CHP Does), and State; (5) Negligence against all Defendants; and (6) Violation of the Bane Act pursuant to Cal. Civ. Code §52.1 against Officer Cates and State. *See* Compl., Dkt. 1-3. For ease of reference, Officer Cates and the CHP Does will be collectively referred to as the "State Defendants," while the Shasta Does and Shasta County will be referred to as the "County Defendants."

///
///

## III. LEGAL STANDARD

"It has frequently been held that determination of a Rule 21(b) motion involves the sound discretion of the trial court." *United States v. Testa*, 548 F.2d 847, 856 (9th Cir. 1977); *United States v. O'Neil*, 709 F.2d 361, 367 (5th Cir. 1983) ("broad discretion"); *Moore v. Knowles*, 482 F.2d 1069, 1075 (5th Cir. 1973); *United States v. Wyoming Nat. Bank of Casper*, 505 F.2d 1064, 1067 (10th Cir. 1974). "Severed claims become independent actions that proceed separately and result in separate judgments." *M.M.M. on behalf of J.M.A. v. Sessions*, 319 F. Supp. 3d 290, 295 (D.D.C. 2018); *Khanna v. State Bar of Cal.*, No. C-07-2587 EMC, 2007 WL 2288116, at *2 (N.D. Cal. Aug. 7, 2007).

"The application of Rule 21 involves considerations of convenience and fairness. It also 'presupposes basic conditions of separability in law and logic.'" *S.E.C. v. Leslie*, No. C 07-3444, 2010 WL 2991038, at *4 (N.D. Cal. July 29, 2010) (quoting *Spencer, White & Prentis, Inc. v. Pfizer, Inc.*, 498 F.2d 358, 362 (2d Cir. 1974)). In making this determination, courts consider multiple factors, including: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) concerns related to judicial economy, multiplicity of litigation, and orderly and efficient resolution of disputes; (4) the availability of witnesses and other evidentiary proof; and (5) the potential for confusion, undue delay, or prejudice to any party." *Sessions*, 319 F. Supp. 3d at 295; *see also Henderson v. Mahally*, 639 F. Supp. 3d 481, 487 (M.D. Pa. 2022); *Leslie*, 2010 WL 2991038, at *4).

## IV. ARGUMENT

### A. Plaintiffs' Claims Arise Out of The Same Transaction Or Occurrence

Despite the clear connection between the manic episode caused by the jail and the "use of force" incident with CHP, the County Defendants argue that the claims against them do not arise out of the same transaction of occurrence as the claims against the State Defendants. *See* Def. Mot. at 4. They explain that the basis for "the single claim for relief against the employees of Shasta County in the second claim for relief" is the improper medication and improper treatment for decedent Couch's serious mental illness while he

was in custody. *Id.* (emphasis added). In contrast, they argue that Plaintiffs' claims against the State Defendants are based on his interaction with CHP Officer Cates after decedent Couch was released from custody. *Id.*

But the County Defendants ignore the indivisible nature of the claims. For example, Plaintiffs' third claim for relief (Fourteenth Amendment – Denial of Familial Relationship) and fifth claim for relief (Negligence) include a request for wrongful death damages were brought against both the State Defendants and County Defendants. The alleged misconduct of the County Defendants—which caused the manic episode that prompted the encounter with CHP and use of deadly force—lies at the heart of entire case against both sets of Defendants. In other words, the parties' respective conduct cannot be considered in a vacuum, especially where one defendant's unlawful conduct may directly inform the liability of the other defendant.

So while the County Defendants are correct that their wrongful conduct is alleged to have occurred only during the time decedent Couch was in custody, the effects of their wrongful conduct carried through until his time of death. That means the claims against the County Defendants are tethered to the same transaction or occurrence as the claims against the State Defendants. This factor accordingly weighs in favor of denying the motion to sever.

### B.     Plaintiffs' Claims Present Common Questions of Law Or Fact

As a threshold matter, Defendant County concedes that "what mental condition decedent was experiencing on his release on February 8, 2023" is the an "arguable common question[] of fact." Def. Mot. at 4.

But that wide-sweeping statement does not capture all the common questions of law or fact that Plaintiffs' claims present. For example, it will not only be important to present evidence of what mental condition decedent Couch was experiencing, but also the symptoms would have been readily observable by both the Shasta Does and Officer Cates.

Additionally, there is an important common fact of damages. For the claims involving "wrongful death" damages, Plaintiffs will need to show the harm they suffered

1 as a result of the loss of their son, including the life-long love, companionship, comfort, support, society, care, and sustenance that decedent Couch would have provided them. These facts and any related legal issues will be *identical* for the claims against both the County Defendants and the State Defendants.

Finally, and perhaps most importantly, the case is sewn together with the legal fabric of proximate causation. Whether the County Defendants' unlawful conduct caused Decedent's death will largely be a function of whether the CHP Officer used *unlawful* force that constitutes an "superseding cause" that prevents liability for the County. *See Brewer v. Teano*, 40 Cal.App.4th 1024, 1030-31 (1995) ("A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."). Thus, the potential liability of the County Defendants is *inextricably intertwined* with the conduct for the CHP officer.

Accordingly, this factor weighs *heavily* in favor of denying the motion to sever.

**C.     Severance Will Disrupt Judicial Economy, Create Duplicate Litigation**

The County Defendants next argue that (1) settlement of the claims would not be "facilitated" by keeping the claims together, because they involve "separate actors and separate incidents," and (2) "judicial economy would be served by severance, as the two trials would be shorter." Def. Mot. at 4. Neither argument is convincing.

Turning first to the length of the trials, Defendants' argument defies common sense. In light of burden on jury members and the substantial pretrial matters of the Pretrial Order, Motions in Limine, and Jury Instructions, it is hard to imagine ***two*** trials being more efficient than one.  Here, two trials would be an especially grave waste of resources, as the following facts and legal issues would be involved in *both trials*: (1) the difficult testimony of the family member regarding the loss of their loved one; (2) the circumstances and observations related to Decedent's mental illness and manic episode, both at the jail and immediately after his release; and (3) the *entirety* of the CHP officer's interaction with Decedent, as it will be the fulcrum point of proximate causation for *both*

sets of Defendants. To force presentation of that evidence twice, and to force impaneling two different sets of community members as jurors (unnecessarily), would undermine the core consideration of judicial economy and resources.

As for the question of "settlement," the County Defendants provide no reasoning to support their argument that settlement of the claims against the County Defendants "would not necessarily facilitate a settlement" of the claims against the State Defendants. *See* Mot. at 4. While it is *possible* that separate defendants may not affect each other's settlement prospects, it is also possible that separate defendants might be "adverse" to each other on a key issue like proximate causation, which can create motivation for settlement from different angles. Further, Plaintiffs may be more likely to settle claims if it ends litigation entirely with both sets of defendants, rather than having to do separate mediations and negotiations in separate lawsuits. Regardless, the speculative nature of future settlement discussions must yield to the core issue of judicial resources, which would be seriously undermined by conducting two trials on a single course of events requiring the presentation of the same evidence.

In short, severance of the claims will both disrupt judicial economy and create duplicative litigation. This factor weighs in favor of denying the motion to sever.

### D. The Availability of Witnesses and Other Evidentiary Proof Does Not Warrant Severance

The County Defendants argue that this factor favors severance because (i) there are no allegations that Officer Cates had any interaction with the County Defendants prior to his interaction with decedent Couch, and (ii) the reasons Officer Cates responded to the scene were "entirely factually different from how the jail may have evaluated decedent, the need for care, what was prescribed etc." Def. Mot. at 5.

But those facts have no bearing on whether Plaintiffs will call the same witnesses and present the same evidence to support the claims against both sets of defendants. As explained above, Plaintiffs will have to do so to prove at least (i) that decedent Couch was in the throes of manic episode from the time of his release to the time of his death,

7   Case No. 2:24-cv-00481-TLN-AC
PLAINTIFFS' OPPOSITION TO DEFENDANT SHASTA COUNTY'S MOTION TO SEVER

(ii) the proximate cause of death, including the entirety of the CHP officer's conduct, and (iii) the familial relationship between decedent Couch and Plaintiffs. Thus, if this Court grants the motion to sever, witnesses will have to testify at both trials, including potentially expert witnesses that will drive up the costs of litigation. Thus, this factor weighs in favor of denying the motion to sever.

### E. Maintaining Plaintiffs' Current Action Will Not Confuse the Jury, Will Not Prejudice A Party, And Will Not Cause Undue Delay

The County Defendants argue that they would be prejudiced if required to stand trial with the State Defendants because a jury's negative decision as to one set of defendants "could inappropriately color the other part," without further explanation as to how that would happen. Def. Mot. at 5. They also argue that "having to participate in discovery regarding the interaction with Officer Cates increases the costs to the defense when their testimony is not relevant to what happened earlier in the jail." *Id.*

But as explained above, the County Defendants failed to recognize that there is not only a "single claim for relief against the employees of Shasta County in the second claim for relief" that is based on failure to provide medical care. Mot. at 4. Rather, Plaintiffs are also pursuing a claim of denial of the familial relationship (third claim of relief, Compl. ¶¶ 82-91) as well as a claim for negligence including wrongful death damages (fifth claim for relief, Compl. ¶¶ 99-112) against the County Defendants. The County Defendants will have to understand the facts of decedent Couch's interaction with Officer Cates in order to defend against these claims—especially to raise the shield of a superseding cause to proximate causation. That means participation in discovery regarding the interaction with Officer Cates is in their best interest and is not an inappropriate increase in costs to the County Defendants.

As to the blanket assertion that a verdict in favor of one set of defendants could negatively color the verdict against the other set of defendants, the opposite risk is just as true. In other words, a jury could find one set of defendants' actions so reprehensible that they do not hold the other set of defendants accountable for their own wrongdoing.

1  This speculative prejudice to either set of defendants or Plaintiffs is not what the courts
2  have in mind when considering potential prejudice.

3  For example, in *Coleman v. Quaker Oats Co.*, the Ninth Circuit affirmed district
4  court's decision to sever ten plaintiffs' separate claims for age discrimination by their
5  employer based on the defendant's argument that keeping the claims together would
6  result in prejudice and jury confusion. 232 F.3d 1271, 1296-97 (9th Cir. 2000). The
7  district court reasoned that the employer "would be prejudiced by having all ten
8  plaintiffs testify in one trial." *Id.* at 1296 (citing *Moorhouse v. Boeing Co.*, 501 F.Supp.
9  390, 393 n. 4 (E.D.Pa.) (stating that "even the strongest jury instructions could not have
10 dulled the impact of a parade of witnesses, each recounting his contention that defendant
11 laid him off because of his age"), *aff'd*, 639 F.2d 774 (3d Cir.1980)). It further
12 "emphasized the danger of jury confusion" because "[f]or each plaintiff, the jury would
13 have had to examine individually his or her employment history as well as the
14 explanations given by Quaker for not retaining him or her, explanations that would
15 require the testimony of each employee's supervisors and raters." *Id.* It also reasoned
16 that "[l]egal confusion was also likely because the plaintiffs had worked for Quaker in
17 six different states, and the jury would have had to evaluate their state law claims in light
18 of the different laws of each state." *Id.* The Ninth Circuit held that "[t]he district court
19 properly considered the potential prejudice to Quaker created by the parade of
20 terminated employees and the possibility of factual and legal confusion on the part of
21 the jury." *Id.* at 1297.

22 No such real potential prejudice is present in this case. There will not be a "parade
23 of witnesses" presenting similar claims against the County Defendants and the State
24 Defendants that will be hard for a jury to ignore. Rather, the trial will be focused on the
25 singular events that resulted in decedent Couch's death. Additionally, there will be no
26 factual or legal confusion because the facts that will be presented are consistent across
27 the claims for all Plaintiffs and against all defendants, and the claims all arise in
28 California.

In short, maintaining the current single lawsuit against both the County Defendants and the State Defendants will not confuse the jury, prejudice a party, or cause undue delay. Thus, this factor also weighs in favor of denying the motion to sever.

## V.  CONCLUSION

Each of the relevant factors favors allowing Plaintiffs to pursue their claims against the County Defendants and the State Defendants in this single lawsuit. Accordingly, this Court should deny the County Defendants' Motion to Sever.

Respectfully Submitted,

DATED: March 20, 2024                    **SINGLETON SCHREIBER, LLP**

By:   */s/ Kimberly S. Trimble*
Kimberly S. Trimble, Esq.
*Attorneys for Plaintiff* JEANELLE COUCH

DATED: March 20, 2024                    **LAW OFFICES OF DALE K. GALIPO**
                                         **LAW OFFICES OF GRECH & PACKER**

By:   */s/ Trenton C. Parker*
Dale K. Galipo, Esq.
Marcel F. Sincich, Esq.
Trenton C. Packer, Esq.
*Attorneys for Plaintiff* DAVID COUCH, Sr.