UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID COUCH, Sr. and JEANELLE COUCH, | No. 2:24-cv-00481-TLN-AC |
| Plaintiffs, | **ORDER** |
| v. | |
| STATE OF CALIFORNIA, et al., | |
| Defendants. | |

This matter is before the Court on Defendant Shasta County's ("Defendant") Motion to Sever.[1]  (ECF No. 8.)  Plaintiffs David Couch, Sr. and Jeanelle Couch ("Plaintiffs") filed an opposition.  (ECF No. 11.)  Defendant filed a reply.  (ECF No. 13.)  For the reasons set forth below, the Court DENIES Defendant's motion.

///
///
///
///
///

_____

[1]     Defendants State of California, California Highway Patrol, and Ryan Cates are also named Defendants in this action, but do not join in the instant motion.

1        I.        FACTUAL AND PROCEDURAL BACKGROUND[2]

2              This case arises from an officer-involved shooting that occurred the day after David

3   Couch, Jr. ("Couch") was released from custody.  Between December 25, 2022, and February 8,

4   2023, Couch was in custody at Shasta County Jail.  (ECF No. 1-3 at 14.)  Shasta County Jail held

5   him in solitary confinement due to serious mental illness.  (*Id.*)  While in custody, Shasta County

6   employees prescribed Couch medication and treatment for his mental illness.  (*Id.*)  Plaintiffs

7   allege Couch was prescribed improper medication and given inappropriate treatment.  (*Id.* at 14–

8   15.)

9              On February 8, 2023, Shasta County Jail released Couch.  (*Id.* at 15.)  His behavior on that

10  day indicated he was experiencing a manic episode, and he was released without information

11  about follow-up treatment.  (*Id.*)  The following day, California Highway Patrol ("CHP") Officer

12  Ryan Cates responded to Couch's residence in Redding, California.  (*Id.*)  Couch was sitting in

13  the driver's seat of the car in his driveway, with the door open.  (*Id.*)  Officer Cates parked his

14  patrol vehicle in the driveway blocking Couch's car, then exited his patrol vehicle, immediately

15  pointed his firearm at Couch, and began issuing commands to Couch.  (*Id.* at 16.)  Couch exited

16  the car and slowly walked to the front of Officer Cates's patrol vehicle, then stopped, while

17  holding only his cell phone in his hand.  (*Id.*)  Officer Cates approached, and with his firearm still

18  pointed at Couch with his right hand, reached out with his left hand to grab and pull Couch

19  toward the patrol vehicle.  (*Id.*)  Couch drew away.  (*Id.*)  Without verbal warning, Officer Cates

20  fired multiple shots at Couch, killing him.  (*Id.* at 17.)

21             Plaintiffs commenced this action in Shasta County Superior Court on January 12, 2024,

22  alleging claims for: (1) excessive force in violation of the Fourth Amendment under 42 U.S.C. §

23  1983; (2) failure to provide medical care in violation of the Eighth and Fourteenth Amendments

24  under 42 U.S.C. § 1983; (3) denial of familial relationship in violation of the Fourteenth

25  Amendment under 42 U.S.C. § 1983; (4) battery; (5) negligence; and (6) excessive force under

26  California Civil Code § 52.1.  (ECF No. 1-3.)  Defendants removed the action to this Court on

27  _____

28  [2]        The following allegations are taken largely verbatim from Plaintiff's Complaint.  (ECF
    No. 1-3 at 6–32.)

2

1    February 15, 2024.  (ECF No. 1.)  Defendant Shasta County filed the instant motion to sever on

2    March 6, 2024.  (ECF No. 8.)

3        **II.    STANDARD OF LAW**

4        Federal Rule of Civil Procedure ("Rule") 21 permits a court to "sever any claim against a

5    party."  Fed. R. Civ. P. 21.  A court has broad discretion in determining whether to sever claims

6    under Rule 21.  *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994).  "There is

7    no established test in the Ninth Circuit for when a district court should exercise its broad

8    discretion to sever a claim under Rule 21."  *Arcure v. Cal. Dep't of Developmental Servs.*, No.

9    1:13-cv-00541-LJO-BAM, 2014 WL 346612, at *6 (E.D. Cal. Jan. 30, 2014).  "Claims may be

10   severable under Rule 21 if they arise from different factual situations or pose different legal

11   questions."  *Khanna v. State Bar of Cal.*, No. C-07-2587 EMC, 2007 WL 2288116, at *2 (N.D.

12   Cal. Aug. 7, 2007).  Claims may also be severed "if it will serve the ends of justice and further the

13   prompt and efficient disposition of litigation."  *Id.*  "Fairness is a critical consideration in

14   determining whether severance is appropriate," and therefore it must be determined whether any

15   party would suffer prejudice.  *Pena v. McArthur*, 889 F. Supp. 403, 407 (E.D. Cal. 1994) (citation

16   omitted).  "As a general matter, Rule 21 severance creates two discrete, independent actions,

17   which then proceed as separate suits for the purpose of finality and appealability."  *Gaffney v.*

18   *Riverboat Servs. of Ind.*, 451 F.3d 424, 441 (7th Cir. 2006).

19       In determining whether to sever a claim under Rule 21, a court may consider the

20   following factors: "(1) whether the claims arise out of the same transaction or occurrence; (2)

21   whether the claims present some common questions of law or fact; (3) whether settlement of the

22   claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if

23   severance were granted; and (5) whether different witnesses and documentary proof are required

24   for the separate claims."  *SEC v. Leslie*, No. C 07-3444, 2010 WL 2991038, at *10–11 (N.D. Cal.

25   July 29, 2010) (quoting *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y.

26   1999)).  This Court has repeatedly applied these factors when ruling on motions to sever.  *See,*

27   *e.g.*, *County of Mono v. Liberty Utilities (Calpeco Electric, LLC)*, No. 2:21-cv-00834-TLN-KJN,

28   2022 WL 3368440 (E.D. Cal. Aug. 16, 2022); *Plasse v. Ford*, No. 2:17-cv-01136-TLN-JDP,

3

1    2021 WL 3912257, at *2 (E.D. Cal. Sept. 1, 2021); *Repro-Med Sys., Inc. v. EMED Techs. Corp.*,

2    No. 2:13-cv-01957-TLN-CKD, 2019 WL 569277, at *4 (E.D. Cal. Feb. 12, 2019).

3        **III.    ANALYSIS**

4            Defendant's motion seeks to sever the claims against it and its employees from the claims

5    against the remaining Defendants and proceed as a separate matter.  (ECF No. 8-1 at 1.)

6    Defendant argues the claims should be severed for the following reasons: (1) the claims against

7    Shasta County and its employees does not arise out of the same transaction or occurrence as the

8    claims against the State and California Highway Patrol; (2) the claims do not present some

9    common questions of law or fact; (3)  no settlement or judicial economy follows from keeping the

10   claims in the same case; (4) prejudice would be avoided if severance were granted, and (5) there

11   are different witnesses and documentary proof required for the separate claims.  (ECF No. 8 at 1–

12   2.)  Plaintiffs argue the factors governing severance overwhelmingly weigh in favor of a joint

13   proceeding.  (ECF No. 11 at 2.)  The Court will address each factor in turn.

14               A.    Same Transaction or Occurrence

15           Defendant argues the interaction between Couch and any of Defendant's employees

16   occurred in a different location and under different circumstances from the events that transpired

17   between Couch and Officer Cates.  (ECF No 8-1 at 4.)  Specifically, the interactions at issue

18   between Couch and county employees all occurred before Couch's release from jail.  (*Id.*)

19   Defendant asserts there was no interaction alleged between the jail staff and CHP upon Couch's

20   release.  (ECF No. 13 at 2.)

21           In opposition, Plaintiffs contend the claims are "indivisible" because their third and fifth

22   claims for relief include wrongful death damages against both Defendant and the remaining

23   Defendants.  (ECF No. 11 at 5.)  In addition, Plaintiffs assert the alleged misconduct of

24   Defendant's employees caused the manic episode that prompted the CHP encounter and use of

25   deadly force, so it is an essential part of claims against both sets of Defendants.  (*Id.*)  Plaintiffs

26   further contend the claims against the remaining Defendants are the effects of the claims against

27   Defendant, so the claims are "tethered" to the same transaction or occurrence.  (*Id.*)

28   ///

                                                    4

Separate events that created separate claims may be properly joined if one "stemmed from the earlier incident." *See Kimbro v. Miranda*, No. 2:12-cv-2154MCEKJNP, 2015 WL 7353927, at *2 (E.D. Cal. Nov. 20, 2015). In *Kimbro*, a state prisoner alleged he was denied his medication by prison employee Clark after attempting to request it at his cell door. *Id.* at *1. Kimbro became angry and threatened to go "man down." *Id.* Later that day, two different prison employees came and told Kimbro he would be taken to see the sergeant. *Id.* They handed him to two other employees, Leone and Morris, for transport. *Id.* Kimbro alleged that during the transport, Leone and Morris used excessive force on him. *Id.* The Court found that his denial of medication claim against Clark and his use of excessive force claim against Leone and Morris were properly joined at the pleading stage, because they were part of a series of occurrences in which Clark denied him his medication. *Id.* at *2.

In the instant case, Shasta County Jail released Couch on February 8, 2023. (ECF No. 1 at 15.) Couch's behavior on that day indicated he was experiencing a manic episode. (*Id.*) Couch was released without information about follow-up treatment. (*Id.*) The following day, Officer Cates responded to Couch's residence in Redding, California. (*Id.*) While the connection between these events is tenuous as alleged, it is conceivable that the incident with Couch and Officer Cates "stemmed" from the earlier incident Plaintiffs allege — Defendant prescribing improper medication, providing inappropriate treatment, and releasing Couch from jail while he was experiencing a manic episode. Both events could conceivably be part of the same transaction or occurrence.

Accordingly, the first factor weighs in favor of denying severance.

### B.   Common Questions of Law or Fact

Defendant concedes there is one common question of fact in what mental condition Couch was experiencing upon his release from jail but asserts there are no other common issues of fact or law. (ECF No. 8-1 at 4.) Defendant argues that the question of whether Officer Cates's use of force was reasonable has no commonality in fact with the question of whether Couch's medical care was adequate. (*Id.*)

///

5

1    In opposition, Plaintiffs argue there are common questions of law or fact, including what

2    mental condition Couch was experiencing upon his release from jail and what symptoms were

3    readily observable by both Defendant's employees and Officer Cates.  (ECF No. 11 at 5.)

4    Plaintiffs further argue there are identical facts for the claims involving wrongful death damages

5    against all Defendants.  (*Id.* at 5–6.)  Plaintiffs also contend the case has commonality through the

6    doctrine of proximate cause, because there is a question of whether Officer Cates's use of force

7    constitutes a "superseding cause" that prevents liability for Defendant.  (*Id.* at 6.)

8    In reply, Defendant cites *Johnson v. Duffy* for the proposition that causation requires

9    "direct personal participation" or "setting in motion a series of acts by others which the actor

10   knows or reasonably know would cause others to inflict the constitutional injury."  (ECF No. 13

11   at 3 (citing *Johnson v. Duffy*, 588 F. 2d 740, 744 (9th Cir. 1978)).)  Defendant also asserts, with

12   no supporting authority, that damages cannot be a common issue because they flow from

13   Plaintiffs and decedent so they will "always be in common."  (ECF No. 13 at 3.)

14   The Court does not find Defendant's arguments persuasive.  *Johnson* explains the

15   threshold for "subjecting" someone to deprivation under 42 U.S.C. § 1983, but it does not lend

16   authority to what level of causal connection between two events is enough to create a common

17   question of law or fact to avoid severance.  588 F.2d at 743.  Moreover, Defendant's assertion

18   that damages will "always be in common" is confusing.  Damages calculations, even when they

19   flow from Plaintiffs, will necessarily be dependent on a number of factors relating to the

20   circumstances of each unique claim.  Further, Defendant does not dispute there are potential

21   common questions of law and/or fact in the wrongful death damages in the third and fifth claims

22   for relief.

23   Regardless, the threshold question here is not whether all questions are in common, but

24   rather, whether there are at least *some* questions in common.  While the claims against the two

25   sets of defendants have little overlap, they nonetheless share at least one clear common question

26   of fact — namely, the mental condition Couch was experiencing upon his release from jail.

27   Accordingly, the second factor weighs in favor of denying severance.

28   ///

1              C.      Settlement of Claims or Judicial Economy

2              Defendant contends that settlement of either the failure to provide medical care claim or

3       the use of force claim would not facilitate settlement of the other because they involve separate

4       actors and separate incidents.  (ECF No. 8-1 at 4.)  Defendant also maintains without explanation

5       that the "the two trials would each be shorter," so judicial economy would be served by

6       severance.  (*Id.* at 4–5.)

7              In opposition, Plaintiffs argue two trials would be a waste of resources, given that some

8       common facts and legal issues would be involved in both.  (ECF No. 11 at 6.)  Specifically, they

9       point to the testimony of family members regarding loss of their loved one, the circumstances and

10      observations related to Couch's mental illness and alleged manic episode, and the entirety of

11      Couch's interaction with Officer Cates.  (*Id.*)  Plaintiffs argue requesting presentation of such

12      evidence twice and impaneling two different sets of jurors would undermine judicial economy.

13      (*Id.* at 7.)  Plaintiffs further assert they may be more likely to settle claims if settlement would end

14      litigation entirely with both sets of defendants, rather than if they had to do separate mediations

15      and negotiations in separate lawsuits.  (*Id.*)

16             The Court agrees with Plaintiffs that conducting two trials would be less economical.  The

17      length of two trials would not necessarily be shorter.  Moreover, length is not the only factor in

18      the volume of the Court's caseload.  In this instant case, it is not convenient, expeditious, or

19      economical to conduct two jury trials on claims arising from two incidents, none of which is

20      "legally or factually complex."  *Kimbro*, 2015 WL 7353927, at *3 (referring to incidents where

21      Kimbro was denied medication at his cell door by one officer and where Kimbro alleged

22      excessive force during transport from his cell by two other officers as "neither legally nor

23      factually complex").  "These factors are of even greater significance in a district laboring under

24      one of the heaviest caseloads in the country . . . ."  *Id.* at *3 (citing *Thomas v. Wilber*, No. 1:10-

25      cv-00006-SKO (PC), 2015 WL 4615911, at *3 (E.D. Cal. July 31, 2015)).  "Routine bifurcation

26      for trial of claims that were initially properly joined would result in an insurmountable burden on

27      this district."  *Id.*

28      ///

1     The parties speculate about settlement decisions and what evidence might be presented.

2  But ultimately, judicial economy is determined by a particular court's circumstances and

3  discretion.  In this instant case, the claims are not complex, and severance may be more

4  burdensome on the Court and its limited resources.

5     Accordingly, the third factor weighs in favor of denying severance.

6              D.    Prejudice

7     Defendant argues they would be prejudiced if required to stand trial with the remaining

8  Defendants because a jury might be biased after deciding negatively against the remaining

9  Defendants.  (ECF No. 8-1 at 5.)  Defendant contends it would be prejudiced because discovery

10  regarding Couch's interaction with Officer Cates is "not relevant" to what happened in the jail yet

11  would increase costs.  (*Id.*)

12     In opposition, Plaintiffs note Defendant does not explain how it would be prejudiced if

13  required to stand trial with the remaining Defendants.  (ECF No. 11 at 8.)  Plaintiffs also argue

14  that participation in discovery regarding Couch's interaction with Officer Cates is in Defendant's

15  best interest, as Defendant must understand the facts to defend against the claims of denial of

16  familial relationship and wrongful death.  (*Id.*)  Specifically, Plaintiff contends Defendant would

17  have to understand this interaction to raise the defense of a superseding cause to proximate

18  causation.  (*Id.*)

19     Plaintiffs also cite and distinguish *Coleman v. Quaker Oats*, a case where the Ninth

20  Circuit affirmed the severance of ten plaintiffs' separate age discrimination claims based on the

21  risk of prejudice and jury confusion.  (*Id.* at 9 (citing *Coleman v. Quaker Oats*, 232 F.3d 1271

22  (9th Cir. 2000)).)  Plaintiffs argue no real prejudice is present in this instant case, because unlike

23  *Coleman*, there are singular events, and the facts are consistent across the claims.  (*Id.* at 10.)

24     In reply, Defendant argues *Coleman* is distinguishable because it involved multiple

25  plaintiffs, different supervisors, six different states, and separate state law claims, so it is not

26  analogous to this instant case.  (ECF No. 13 at 3–4.)

27     The Court agrees with Defendant that *Coleman* is not sufficiently analogous to determine

28  the factor of prejudice.  However, Defendant does not cite to any authority to support its prejudice

8

1    argument.  In fact, prejudice based on "inappropriate coloring," as suggested by Defendant (*see*

2    ECF No. 8-1 at 5), has not been an issue in previous excessive force cases in the Eastern District.

3    *See, e.g.*, *Thomas*, 2015 WL 4615911, at *4 (denying a motion to sever an excessive force claim

4    from two retaliation claims, finding that "any risk of prejudice due to jury confusion or conflation

5    of issues is purely speculative rather than actually articulable"); *Kimbro*, 2015 WL 7353927, at *3

6    (denying a motion to sever an excessive force claim from a denial of medication claim, finding

7    that "any risk of prejudice due to jury confusion or conflation of issues is purely speculative," and

8    "any risk of confusion or conflation is readily ameliorated through jury instructions and separate

9    verdict forms").  As the issues in this case are not complex, the risk of prejudice can be

10   sufficiently mitigated through careful jury instructions.  Finally, the parties' arguments regarding

11   discovery are based on speculation, as discovery costs and findings are impossible to predict at

12   this juncture.

13            Accordingly, the fourth factor is neutral.

14                    E.       Different Witnesses and Documentary Proof

15            Defendant notes there are no allegations that Officer Cates had any interaction with

16   Defendant's employees prior to his interaction with Couch.  (ECF No. 8-1 at 5.)  Defendant

17   argues that the way the jail evaluated and treated Couch, and the way Officer Cates responded to

18   the scene, are entirely factually different.  (*Id.*)

19            In opposition, Plaintiffs do not contest the factual differences, but argue they would still

20   have to present some of the same witnesses and evidence to support claims against both sets of

21   Defendants.  (ECF No. 11 at 7.)

22            While there is little factual overlap between the events that transpired at the jail and the

23   shooting that occurred after Couch's release from jail, overlapping witnesses will still likely be

24   required if the claims are split.  Plaintiffs are correct that they would have to call the same

25   witnesses and present the same evidence to prove: (1) that Couch was experiencing a manic

26   episode from the time of his release from jail to the time of his death; (2) the proximate cause of

27   Couch's death, which includes Officer Cates's conduct; and (3) the familial relationship between

28   Couch and Plaintiffs.  (*Id.* at 10–11.)  At trial, the witnesses and documentary proof involved

                                                         9

1   would not be completely different between Defendant and the remaining Defendants.

2          Accordingly, the fifth factor weighs in favor of denying severance.

3          On balance, the factors generally weigh in favor of denying severance, and none of the

4   factors weigh in Defendant's favor of severance. Therefore, the Court DENIES Plaintiff's Motion

5   to Sever.

6   **IV.    CONCLUSION**

7          For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Sever (ECF

8   No. 8.)  The Court has reviewed the docket and notes that Defendant has missed its deadline to

9   file a responsive pleading or answer to Plaintiffs' Complaint.  None of the parties raise this issue

10  in the briefing on the instant Motion to Sever or in the joint status report (*see* ECF No. 15).

11  Nevertheless, the Court will allow Defendant to file an answer within twenty-one (21) days of the

12  electronic filing date of this Order.  Pursuant to the Initial Pretrial Scheduling Order (ECF No. 2),

13  all fact discovery shall be completed no later than three hundred and sixty-five (365) days from

14  the date upon which Defendant's answer is filed with the Court.

15         IT IS SO ORDERED.

16         Date: October 29, 2024

17

18

19  _____

20  TROY L. NUNLEY
    CHIEF UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28